11-3520-cv
Wright v. Monroe Cmty. Hosp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 29th day of August, two thousand twelve.

Present:
> ROBERT A. KATZMANN,
> RICHARD C. WESLEY,
> GERARD E. LYNCH,
> > *Circuit Judges*.

---

JACQUELINE WRIGHT,

> *Plaintiff-Appellant*,

> v.                                                    No.  11-3520-cv

MONROE COMMUNITY HOSPITAL,

> *Defendant-Appellee.*

---

For Plaintiff-Appellant:       STEVEN LAPRADE (Christina A. Agola, *on the brief*), Christina A. Agola, PLLC, Rochester, N.Y.

For Defendant-Appellee:       PAUL D. FULLER, Monroe County Law Department, Rochester, N.Y.

Appeal from the United States District Court for the Western District of New York (Telesca, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Jacqueline Wright ("Wright" or the "plaintiff") appeals from a final judgment entered by the United States District Court for the Western District of New York (Telesca, *J.*) on July 29, 2011 in favor of Defendant-Appellee Monroe Community Hospital (the "hospital" or the "defendant"), following a July 28, 2011 Decision and Order granting the defendant's motion for judgment on the pleadings. On appeal, the plaintiff challenges the dismissal of her claims based on (1) racial discrimination, (2) retaliation, and (3) pregnancy discrimination. We assume the parties' familiarity with the facts and procedural history of this case.

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Accordingly, we review *de novo* a district court's grant of a motion for judgment on the pleadings, "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). In order to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

2

We first consider whether the district court erred in dismissing Wright's causes of action for discrimination based on race. The complaint's first, third, and fourth causes of action all allege race-based claims of hostile work environment, which we analyze using Title VII standards. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in violation of § 1981 or the Equal Protection Clause . . . ."); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996) ("We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law.").

"A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted). "[I]n limited circumstances" the plaintiff can satisfy the first prong by pointing to "a single, acute incident of abuse," but that "incident [must] constitute an intolerable alteration of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job." *Mathirampuzha v. Potter*, 548 F.3d 70, 78-79 (2d Cir. 2008) (internal quotation marks and citation omitted). The second prong is satisfied if a plaintiff can show that the employer "failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks omitted).

3

The plaintiff principally bases her hostile work environment claims on the following three allegations: (1) she was reassigned to care for a patient who was known to make "intolerable racist comments" and "target the minorities within the staff and make complaints and accusations against them," J.A. 8, ¶ 16-17; (2) that patient "repeatedly denigrated Plaintiff and made racial comments such as calling Plaintiff 'nigger,'" *id.*, ¶ 21; and (3) when Wright complained about that patient's behavior, the defendant "refused to acknowledge her complaints or simply stated that the patient had dementia and told Plaintiff 'sometimes you just have to deal with it,'" *id.* at 8-9, ¶ 23. As an initial matter, Wright does not plausibly allege that the hospital's decision to assign Wright to the relevant patient was motivated by racial animus. The complaint alleges that Wright was given responsibility for the relevant patient after she made a second report of another patient's alleged drug use and was confronted by the other patient's assigned nurse, who "aggressively swore at Plaintiff" and told the plaintiff she "should just leave [the other patient] alone." *Id.* at 7, ¶ 13. Thus, the plaintiff's own complaint suggests that it was this incident, rather than racial animus, that motivated the decision to reassign Wright to another patient. As to the allegation that the hospital did not take sufficient action in response to her assigned patient's racist comments, while the patient's alleged behavior is certainly objectionable, we cannot conclude that the facts as alleged provide "a specific basis . . . for imputing the objectionable conduct to the employer," *Alfano*, 294 F.3d at 373, because the hospital cannot be held responsible for the outbursts of a patient suffering from dementia.

We next consider whether the district court improperly dismissed the plaintiff's retaliation claims. The plaintiff's fifth and eighth causes of action allege retaliation under Title VII and her sixth and ninth causes of action allege retaliation under the New York State Human Rights Law. To establish a *prima facie* case of retaliation, the plaintiff must establish that

4

"(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of [the] plaintiff's participation in the protected activity; (3) the employer took adverse action against [the] plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (internal quotation marks omitted).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" (quoting 42 U.S.C. § 2000e-3(a))). Wright contends that she sufficiently alleged that she was engaged in protected activity because the complaint alleged that she "complained about [her patient's] behavior, yet defendant refused to acknowledge her complaints or simply stated that the patient had dementia and told Plaintiff 'sometimes you just have to deal with it.'" J.A. 8-9, ¶ 23. These allegations are inadequate for the same basic reason as Wright's racial discrimination allegations: the patient about whose racist comments she complained was demented. The mere allegation that hospital staff were aware of and unable to control the racist statements of a demented patient is insufficient to demonstrate that those statements were attributable to the hospital. Accordingly, plaintiff's complaint fails to adequately allege that in complaining about the patient she had a reasonable, good faith belief that she was complaining about an employment practice of the hospital's. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (noting that the "protected activity" element of a Title VII claim

5

requires a plaintiff to have a "good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII" (internal quotation marks omitted)). Thus, the district court did not err in concluding that the complaint does not adequately allege that Wright was engaged in protected activity.

The final issue on appeal is whether the district court improperly dismissed the plaintiff's seventh cause of action brought pursuant to the Pregnancy Discrimination Act. Title VII was amended by the Pregnancy Discrimination Act to clarify that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). To establish a *prima facie* case of sex discrimination under Title VII, "a plaintiff must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

An adverse employment action is a "materially adverse change in the terms and conditions of employment" that "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005) (internal quotation marks omitted). In arguing that the complaint sufficiently pleads adverse employment action, the plaintiff principally points to three allegations. First, the complaint alleges that when Wright told her co-worker that she could not assist with a room change, the co-worker screamed "if you can't do anything why don't you have your doctor take you out" and "I'm just sick of

6

your attitude, just because your[sic] pregnant doesn't mean your[sic] handicap[ped]." J.A. 10, ¶ 32.  Second, the complaint alleges that even though Wright's supervisor, Nurse Manager Hughes, observed Wright's co-worker screaming at her, Hughes failed to intervene, failed to take any kind of disciplinary action against the co-worker, and told Wright that she would have to get a doctor's note if she was unable to move beds.  Third, on the same day of this incident, the hospital held an emergency meeting with Wright, informing her that pregnancy was a condition, not a disability, and that if she had limitations she would need to bring in a doctor's note.  While all of these allegations suggest that Wright was subjected to unpleasant comments, we cannot conclude that any of these incidents constitutes an adverse employment action.  Indeed, the complaint nowhere alleges that Wright was disciplined in any way or transferred to another position for failing to move the bed.  While the plaintiff argues that the hospital "continued to harass Wright, increase her workload, and scrutinize her work to the point that she was taken out on medical leave," Appellant Br. 25, this conclusory allegation is insufficiently specific to plausibly plead an adverse retaliatory action.  Accordingly, the district court did not err in dismissing Wright's sex discrimination claim.

We have considered Wright's remaining arguments and find them to be without merit.  For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7