Alicia **HUGHES**, Plaintiff,

v.

**XEROX CORPORATION**, Defendant.

No. 12–CV–6406.

United States District Court, W.D. New York.

Signed Aug. 13, 2014.

Charles L. Miller, II, Lindy Korn, Law Office of Lindy Korn, Buffalo, NY, for Plaintiff.

Margaret A. Clemens, Trent M. Sutton, Littler Mendelson, P.C., Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

Plaintiff Alicia Hughes ("Plaintiff") brings this claim for employment discrimination based upon race and gender against defendant Xerox Corporation ("Defendant"). Presently before the Court is Defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) seeking dismissal of all the causes of action in the complaint except for a portion of the sixth cause of action. (Dkt. 5). For the reasons set forth below, Defendant's motion is granted in part and denied in part.

### BACKGROUND

Plaintiff alleges that she is an African American woman who has been employed by Defendant since 1996. (Dkt. 1 at ¶¶ 5, 7). According to Plaintiff, she has been unlawfully paid less than her male counterparts "[s]ince about 2006." (Id. at ¶ 16). Plaintiff further alleges that once Sandra

Karpen, a white female, was assigned as Plaintiff's direct supervisor in 2008, Plaintiff was subjected to a hostile work environment. (*Id.* at ¶ 18). Additionally, Plaintiff alleges that she applied for several internal positions with Defendant between mid–2008 through late 2009, but she did not receive the positions due to unlawful discrimination. (*Id.* at ¶¶ 22–24). The positions specified in the complaint are the following: (1) the Mono Fab Plant Operations Manager (a white female was allegedly promoted to this position); (2) the Warehouse Logistical Operations Manager (a white male was allegedly promoted to this position); (3) the iGen Plant Manager (a white male was allegedly promoted to this position); and (4) the iGen Materials Manager (a white female was allegedly promoted to this position). (*Id.* at ¶ 24).

Plaintiff's complaint goes on to allege that "[d]uring the summer of 2010" she continued with "exploratory interviews" but she was "assigned a project that was lower than her skill and management level" and she was criticized for the timeliness of her performance on that project. (*Id.* at ¶ 29). Plaintiff alleges that in September/October 2010, she was working on a "second, low visibility project below her experience and education level" and she was assigned to work with "Dispatcher Kim Haley, a white female" who, according to Plaintiff, "has had verbal altercations with her direct supervisors." (*Id.* at ¶ 30). Plaintiff alleges that Ms. Haley "made a report to management that the Plaintiff was 'scaring' her" and Plaintiff was issued a "final warning" in November 2010. (*Id.*).

Plaintiff further complains that after being out of town on a two-week medical leave in February 2011, she learned that her office was being moved to the warehouse and she was given a new assignment that was undesirable, "offered no visibility" and was below her "experience and edu-

cational qualifications". (*Id.* at ¶¶ 32–33). Plaintiff alleges that after working a month on this new assignment, she was told by her new manager that "she needs to 'walk the process'" and she was given job tasks that were largely clerical and below her qualifications. (*Id.* at ¶¶ 36–37). According to Plaintiff, two separate employees complained about her in April 2011 and August 2011, resulting in Plaintiff having to meet with Human Resources personnel and complete an anger management course. (*Id.* at ¶¶ 38–41). Plaintiff alleges that she remains in "a low visibility position that does not fit her job qualifications, experience, or education" and that her complaints have been ignored or disregarded. (*Id.* at ¶¶ 42–43, 45). Finally, Plaintiff alleges that in April 2012, her co-employees made racist comments on a "sympathy" card posted in an employee kitchen area regarding an article about the loss of incentive pay for Xerox CEO Ursula Burns, who is African American. (*Id.* at ¶ 44).

Plaintiff alleges that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2011, and it was cross-filed with the New York State Division of Human Rights ("DHR") on March 25, 2011. (*Id.* at ¶¶ 9–10). According to Plaintiff, the DHR made a Determination and Order After Investigation of Probable Cause on September 20, 2011, but prior to any hearing, the DHR complaint was dismissed for administrative convenience. (*Id.* at ¶¶ 11–13). Plaintiff alleges that she received a right to sue letter from the EEOC on May 7, 2012. (*Id.* at ¶ 13).

Plaintiff commenced this action on August 1, 2012. (Dkt. 1). Plaintiff's complaint purports to assert the following causes of action: (1) a gender discrimination claim in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) a discrimination claim pursuant to the Equal Pay Act, 29 U.S.C. § 206(d); (3) a discrimination claim pursuant to the Lilly Ledbetter Fair Pay Act under Title VII, 42 U.S.C. § 2000e–5; (4) a race discrimination claim in violation of Title VII; (5) a hostile work environment claim based upon Plaintiff's race in violation of Title VII; (6) a race discrimination claim under section 1981 of the Civil Rights Law, 42 U.S.C. § 1981 (" § 1981"); (7) a gender discrimination claim in violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("HRL"); and (8) a hostile work environment claim based upon Plaintiff's race in violation of the HRL.

On October 5, 2012, Defendant filed a motion to dismiss seeking dismissal of all causes of action in the complaint except for part of the sixth cause of action that alleges § 1981 violations. (Dkt. 5). The case was subsequently transferred to the undersigned on February 21, 2014 (Dkt. 14), and oral argument was held on May 29, 2014. (Dkt. 17).

## DISCUSSION

### I. *Legal Standard*

A court should consider a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

In opposition to the motion to dismiss, Plaintiff submitted a copy of her EEOC charge dated March 24, 2001, and a copy of her complaint filed with the DHR. (Dkt. 8–2, 8–3). Similarly, Defendant attached the DHR complaint to its motion papers. (Dkt. 5–2 (Ex. A)). Plaintiff's federal complaint expressly references both the EEOC charge and the DHR complaint. (Dkt. 1 at ¶¶ 9–10). While matters outside the four corners of a complaint are not typically relevant for consideration on a motion to dismiss, materials that are expressly referenced in the complaint and submitted by the parties in connection with the underlying motion, such as the EEOC charge and DHR complaint at issue in the present motion, may be considered by the Court in connection with the pending motion. *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes,

consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). *See, e.g., Morris v. David Lerner Assoc.,* 680 F.Supp.2d 430, 436 (E.D.N.Y.2010) (court could consider DHR and EEOC decisions and filings on motion to dismiss); *Byrne v. Telesector Res. Grp., Inc.,* No. 04–CV–76S, 2005 WL 464941, at *4 (W.D.N.Y. Feb. 25, 2005), *aff'd,* 339 Fed.Appx. 13 (2d Cir.2009) (plaintiff's EEOC charge considered on motion to dismiss where it was expressly referenced in complaint).

## II. *Administrative Exhaustion of Title VTT Gender Discrimination Claims*

■ To maintain a timely Title VII claim, a plaintiff must: "(1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue letter, and (3) file an action within 90 days of receipt of that letter." *Collier v. Boymelgreen Dev.,* No. 06 CV 5425(SJ), 2007 WL 1452915, at *2 (E.D.N.Y. May 17, 2007) (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996)). Exhaustion of administrative remedies is a "precondition to bringing a Title VII claim in federal court...." *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (internal quotations and citations omitted).

Defendant argues that Plaintiff's claim of Title VII gender discrimination in her first cause of action must be dismissed because the EEOC charge contained only allegations of gender discrimination relating to Plaintiff's unequal pay claim. (Dkt. 5–3 at 20). The EEOC charge plainly identified sex as a basis for Plaintiff's claimed discrimination. (Dkt. 8–2 at 3). Moreover, the EEOC charge contained factual allegations about discrimination based upon the failure to promote Plaintiff to various positions and her reassignment to low visibility projects. (*Id.* at 6–7). Defendant contends that, notwithstanding Plaintiff's reference to sex discrimination in her EEOC charge, Plaintiff has only preserved a gender discrimination claim for the unequal pay claims, because in the EEOC charge she appears to limit her failure to promote allegations to race-based discrimination. (*See id.* at 6 ("I have applied for several internal positions for which I was qualified, but not selected. I believe that I was not selected for the positions because of my Race/African American, in willful violation of Title VII of the Civil Rights Act of 1964, as amended.")).

■ "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. As explained by the Second Circuit Court of Appeals in *Ximines v. George Wingate High Sch.,* 516 F.3d 156 (2d Cir. 2008):

This Circuit has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central ques-

tion is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.

*Id.* at 158 (alterations in original) (quotations and citations omitted).

■ Here, Plaintiff bases her Title VII gender discrimination claims on the failure to promote her to various positions, the assignment of low visibility projects, the relocation of Plaintiff's office location, and being told to "walk the process" on an IPO assignment. (Dkt. 1 at ¶¶ 47–53). The factual basis for these alleged adverse actions are either expressly addressed in the EEOC charge, or they appear to have occurred subsequent to the filing of the EEOC charge. (*Id.* at ¶¶ 32–37). The fact that the alleged adverse actions referenced in the EEOC charge did not expressly state that the conduct occurred because of gender discrimination is not fatal to Plaintiff's claims, particularly where she was acting *pro se* at the time of the filing of the charge. (Dkt. 8 at 12 ("Plaintiff filled out the EEOC complaint forms herself, without the benefit of counsel. . . ."). *See Butts,* 990 F.2d at 1402 ("Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' ").

■ Even if the EEOC charge could be construed as only alleging a gender discrimination claim for the unequal pay claims, the Court views Plaintiff's allegations of gender discrimination based upon other alleged adverse employment actions as reasonably related to the claims in the charge. "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge 'where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 83 (2d Cir.2001) (quoting *Butts,* 990 F.2d at 1402). "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination [of the type alleged in the civil complaint]. . . ." *Williams v. N.Y. City Hous. Auth.,* 458 F.3d 67, 70 (2d Cir.2006) (internal quotations and citation omitted).

The recent case of *McCullough v. Xerox Corp.,* 942 F.Supp.2d 380 (W.D.N.Y.2013) is on point. In *McCullough,* the plaintiff filed an EEOC charge alleging that she was paid less than male employees, and that she was subject to a hostile work environment because of her race. In her federal complaint, the plaintiff alleged that she was paid less than similarly-situated white employees on account of her race. No such allegation was included in her EEOC charge, which alleged that she was denied unequal pay based solely on her gender. Notwithstanding the defendant's arguments that the plaintiff failed to exhaust her unequal pay claim based on race, the Court held that plaintiff's unequal pay claim due to race discrimination was reasonably related to her EEOC charge of unequal pay due to gender discrimination.

Because the plaintiff had alleged some form of race discrimination in her EEOC charge (a hostile work environment), the Court concluded that plaintiff's claim of unequal pay based on race was "sufficiently and reasonably related to her EEOC allegation that she was denied equal pay on account of her sex...." *Id.* at 385.

Similarly, in this case, the Court finds that Plaintiff either expressly raised the grounds for her Title VII gender discrimination claim in her EEOC charge, or the allegations asserted in her federal complaint are reasonably related to those raised in the EEOC charge. As a result, Plaintiff has administratively exhausted her claims of Title VII gender discrimination and Defendant's motion to dismiss on this ground is denied.

### III. *Timeliness of Plaintiff's Title VII Disparate Treatment Claims Based on Alleged Adverse Employment Actions*

Plaintiff bases her Title VII gender discrimination claim asserted in the first cause of action on the following events: (1) Plaintiff's application to "various jobs with Defendant" and the hiring of less experienced and educated individuals outside Plaintiff's protected class for the positions; (2) Plaintiff's assignment of "low/no visibility" projects that were below her skills and qualifications; (3) the movement of Plaintiff's office to the warehouse; and (4) Plaintiff being required to "walk the process" on the IPO assignment. (Dkt. 1 at ¶¶ 46–54). Plaintiff bases her Title VII race discrimination claim asserted in the fourth cause of action on the same alleged events, and also includes two additional events: (1) Plaintiff was allegedly targeted by Defendant by having employees complain about her being intimidating, apparently resulting in Plaintiff being issued a "final" warning in November 2010, and she

was required to take an anger management course in September/October 2011; and (2) the allegedly racially offensive "sympathy card" that was posted in an employee kitchen area. (*Id.* at ¶¶ 62–73; *see id.* at ¶¶ 30, 41).

■ Pursuant to 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file an EEOC charge under Title VII within 300 days of the occurrence of a discriminatory act. *Collier*, 2007 WL 1452915, at *6. The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint will bar a plaintiff's action. *Van Zant*, 80 F.3d at 712. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (unlike a hostile work environment claim, conduct that serves the basis for a disparate treatment claim represents discrete discriminatory acts, each of which starts a new clock for statute of limitations purposes). As explained by the Second Circuit Court of Appeals in *Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004): "Title VII claims, such as those for termination or failure to promote, are based on discrete acts, each giving rise to a separate cause of action. The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period." *Id.* at 220 (quotations and citations omitted).

Defendant argues that Plaintiff failed to timely file an administrative charge within that 300 day time period for any action that could rise to the level of an adverse employment action. Plaintiff filed her EEOC charge on March 24, 2011. (Dkt. 1 at ¶ 9). Therefore, any disparate treatment occurring more than 300 days before that date would be time-barred. In other words, any actions occurring prior to late May 2010, are barred. According to Defendant, the only adverse employment ac-

tions alleged in the complaint occurred prior to late May 2010.

Admittedly, Plaintiff bases her Title VII race and gender discrimination claims on the failure to promote her to four specific positions during the time frame "mid–2008 through late 2009." (*Id.* at ¶¶ 23–25). Plaintiff concedes that any Title VII claims based upon the failure to promote to these positions is time-barred. (Dkt. 8 at 16). However, Plaintiff contends that there are other adverse employment actions that serve as the basis for her Title VII claims and these actions are timely. Specifically, Plaintiff alleges the following post-May 2010 conduct in her complaint: [1]

- In June/July 2010, she complained to the President of the Black Women's Leadership Council about the failure to promote (Dkt. 1 at ¶ 28);

- In the summer of 2010, Plaintiff engaged in "exploratory interviews" for other positions within the company (*id.* at ¶ 29);

- During that same time period, Plaintiff was assigned to a project that was lower than her skill and management level, and then unjustly criticized for the timeliness of the performance on that project (*id.*);

- Thereafter, Plaintiff continued to interview for higher positions with Defendant but was unsuccessful (*id.*);

- Plaintiff was issued a "final" warning in November 2010 (*id.* at ¶ 30);

- Plaintiff's office was relocated in March 2011 (*id.* at ¶ 32);

- Plaintiff was given an IPO assignment which was undesirable (*id.* at ¶ 33), and for which Plaintiff was told she needed to "walk the process" (*id.* at ¶¶ 33–36);

- Plaintiff was assigned job duties that were below her skill level (*id.* at ¶ 37);

- Other employees were encouraged to target Plaintiff and report her to Human Resources (*id.* at ¶¶ 38–40);

- Plaintiff was required to take an anger management course in September/October 2011 (*id.* at ¶ 41);

- In April 2012, the racially offensive sympathy card was posted in the employee break area wall (*id.* at ¶ 44).

▇▇ Defendant contends that the conduct complained of above does not rise to the level of an adverse employment action, and therefore, even if timely, they render

---

**1.** Defendant contends that many of these allegations were not included in Plaintiff's EEOC charge and, therefore, she has failed to exhaust her administrative remedies with respect to these alleged adverse employment actions. (Dkt. 5–9 at 23). There is no question that Plaintiff alleged in her EEOC charge, filed on March 24, 2011, that she was assigned to less desirable positions and her opportunities for career advancement were impacted. (Dkt. 5–2 at 3). Similarly, Plaintiff alleges in her EEOC charge that she "applied for several internal positions for which I was qualified, but not selected." (*Id.*). As discussed at Point II of this Decision and Order, to the extent that additional conduct occurred after Plaintiff filed her EEOC charge and that conduct serves as the basis for her claims of adverse employment actions, the additional conduct would only need to be referenced in a separate EEOC charge if it was *not* reasonably related to the charges in Plaintiff's initial EEOC charge. Since some of the subsequent conduct that can serve as an alleged adverse employment action is plainly related to the allegations in the initial EEOC charge (e.g. further assignment of low visibility projects and impeding opportunities for career growth), the Court need not at this stage of the proceedings further parse out which subsequently occurring events are reasonably related to the allegations in the initial EEOC charge.

Plaintiff's Title VII claims not plausible.[2] According to Defendant, Plaintiff's allegations that "she was given low visibility assignments, insufficient resources, a less desirable office location and other similarly trivial concerns will not suffice." (Dkt. 5–3 at 25). Defendant cites two cases in support of this argument: *Wright v. Monroe Cmty. Hosp.*, 493 Fed.Appx. 233 (2d Cir.2012) and *Hicks v. Baines*, No. 99–CV–0315C(Sc), 2006 WL 1994808 (W.D.N.Y. July 14, 2006). (*Id.*). The Second Circuit Court of Appeals reversed the district court's decision in *Hicks* on the very finding that is cited by Defendant. *See Hicks v. Baines*, 593 F.3d 159, 166–69 (2d Cir.2010) (finding that allegations of workplace sabotage and punitive scheduling were sufficient to survive summary judgment and show an adverse employment action for purposes of a retaliation claim). In *Wright*, the Second Circuit Court of Appeals affirmed the dismissal of the complaint for failure to allege an adverse employment action, where the plaintiff's allegations consisted of complaints about unpleasant comments, but did not include allegations that the plaintiff "was disciplined in any way or transferred to another position...." 493 Fed.Appx. at 237.

■ The law is not as clear-cut as Defendant contends. For purposes of a claim for discrimination under Title VII, "a plaintiff may suffer an 'adverse employ-

ment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" *Richardson v. New York State Dept. of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir.1999) (citations omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To qualify as a materially adverse employment action, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.2012) (quotation and citation omitted). " 'Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Sethi v. Narod*, No. 11–CV–2511 (MKB), 12 F.Supp.3d 505, 523, 2014 WL 1343069, at *11 (E.D.N.Y. Apr. 2, 2014) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.2004)).

■ There are no "bright-line rules" as to what constitutes an adverse employment action, and Title VII "does not define adverse employment action solely in terms of job termination or reduced wages and benefits...." *Richardson*, 180 F.3d at 446 (quotations and citations omitted). As a result, "courts must pore over each case to

---

2. In addition to arguing that Plaintiff's allegations do not rise to the level of an adverse employment action, Defendant also argues that Plaintiff has failed to allege circumstances from which an inference of discrimination can be inferred. (Dkt. 5–3 at 24). Circumstances that may give rise to an inference of discrimination include an "employer's more favorable treatment of employees outside of the protected group, or the sequence or timing of events leading to the plaintiff's discharge." *Anderson v. Hertz Corp.*, 507 F.Supp.2d 320, 327 (S.D.N.Y.2007), *aff'd*, 303

Fed.Appx. 946 (2d Cir.2008). Here, Plaintiff alleges that she was treated differently than similarly situated individuals outside her protected class. (*See, e.g.*, Dkt. 1 at ¶ 32 ("Male co-workers who worked on the same project were not required to move their office to the warehouse."); ¶ 36 ("Plaintiff's male co-workers involved on the project were not required to 'walk' the process.")). While Defendant's argument may ultimately serve as the basis for a summary judgment motion, at this stage of the proceedings it would not be appropriate to dismiss the complaint on this ground.

determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997).

For example, "simply being assigned undesirable work duties ... [is] insufficient to establish adverse employment action, since [it does] not have a material impact on the terms and conditions of plaintiff's employment." *Castro v. City of New York,* No. 10–cv–4898(NG)(VVP), 24 F.Supp.3d 250, 264, 2014 WL 2582830, at *10 (E.D.N.Y. June 5, 2014) (alterations in original) (quotations and citation omitted). Yet, under certain circumstances, a change in office space may constitute an adverse employment action. *See Myers v. New York City Human Rights Comm'n,* No. 04 Civ. 00543(JCF), 2006 WL 344754, at *11 (S.D.N.Y. Feb. 15, 2006). Similarly, "[a]n internal transfer can constitute an adverse employment action if 'accompanied by a negative change in the terms and conditions of employment,' ... or 'if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career.'" *Lewis v. New York City Transity Auth.,* No. 04–cv–2331 (SLT)(MDG), 12 F.Supp.3d 418, 440, 2014 WL 1343248, at *13 (E.D.N.Y. Mar. 31, 2014) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 144 (2d Cir. 2003) and *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 641 (2d Cir.2000)). *See Feingold v. New York,* 366 F.3d 138, 153 (2d Cir.2004) (assignment of disproportionately heavy work load could constitute adverse employment action); *La Grande v. Decrescente Distrib. Co.,* 370 Fed.Appx. 206, 211 (2d Cir.2010) (reversing district court's dismissal of complaint and finding it plausible that plaintiff's allegations that he was denied training that diminished his material responsibilities or opportunities constituted adverse employment action).

As a further example, "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action." *Dimitracopoulos v. City of New York,* No. 14–CV–674, 26 F.Supp.3d 200, 214, 2014 WL 2547586, at *9 (E.D.N.Y. June 4, 2014) (quoting *Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 86 (2d Cir. 2001)). "A thin-skinned worker's reaction to criticism by a supervisor will not support a claim of ... discrimination unless it is outside the bounds of appropriate supervision...." *Id.* Likewise, "the threat of disciplinary action, without more, does not constitute an adverse employment action." *Henry v. New York City Health & Hosp. Corp.,* No. 13 Civ. 6909(PAE), 18 F.Supp.3d 396, 407, 2014 WL 957074, at *6 (S.D.N.Y. Mar. 10, 2014) (alleged manufacturing of charges against plaintiff did not constitute adverse employment action, where there was no allegation that it impacted terms and conditions of employment). Further, without more, unprofessional or boorish behavior does not amount to an adverse employment action. *Sethi,* 12 F.Supp.3d at 527, 2014 WL 1343069, at *14 (adverse employment action not found where president of company "charged, slapped and 'chested'" plaintiff at a meeting and used derogatory and offensive language).

On the other hand, "'[n]egative employment evaluation letters may ... be considered adverse,' if they trigger other negative consequences in the terms and conditions of the plaintiff's employment, qualifying as a materially adverse [action]." *Dimitracopoulos,* 26 F.Supp.3d at 214, 2014 WL 2547586 at *10 (quoting *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir.2002)).

Furthermore, while a plaintiff who has applied for a position and been

rejected has typically suffered an adverse employment action, "[m]erely expressing an interest in a position is insufficient to support a failure to promote claim." *Sethi*, 12 F.Supp.3d at 525, 2014 WL 1343069, at *13 (collecting cases). In other words, in the context of a failure to promote claim, a plaintiff must allege that she "applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she ... generally requested promotion." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998). On the other hand, the requirement that a plaintiff allege that she applied for the specific job or jobs at issue "does not apply where ... the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them." *Mauro v. S. New Eng. Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir.2000).

Here, there is no dispute that any Title VII claim based upon a failure to promote Plaintiff to the specific positions specified in the complaint that she applied for in 2008 and 2009 are time-barred. However, Plaintiff also alleges that she "continued to interview for higher positions with Defendant but was unsuccessful." (Dkt. 1 at ¶ 29). This appears to allege more than simply expressing an interest in a position, but neither the EEOC charge nor the federal complaint refer to any other positions for which Plaintiff actually applied, other than the four positions that are plainly outside the 300–day time limitation. (*See* Dkt. 5–2 at 4). Without more, Plaintiff's allegations do not meet the standard set forth in *Brown* and do not plausibly allege a timely failure to promote claim.

However, Plaintiff alleges more than simply the failure to promote. She also makes allegations that her office was reassigned and her job duties were taken away, essentially placing her into a clerical position. Similarly, Plaintiff alleges that she was issued a "final" warning in November 2010, that she was reported to Human Resources, and that she was required to take an anger management course.

While the simple relocation of Plaintiff's office or reassignment of different job duties would not rise to the level of a plausible adverse employment action, Plaintiff's allegations suggest that these actions were taken as part of a concerted effort to alter the terms and conditions of Plaintiff's employment by stagnating any opportunity for growth and represented a setback in her career. Likewise, the threat of disciplinary action without more would not constitute an adverse employment action, but if the conduct triggered other negative consequences, the conduct could constitute an adverse employment action. In other words, while the question is close, it is plausible that under certain circumstances (albeit rare circumstances) the type of conduct alleged by Plaintiff could rise to the level of an adverse employment action.

The Court does not mean to suggest that the allegations in the first and fourth causes of action concerning the alleged adverse employment actions taken by Defendant are a model of clarity, nor does the Court endorse the notion that Plaintiff's allegations will ultimately survive a summary judgment motion. However, at this stage of the proceedings, it would be improper for the Court to dismiss Plaintiff's first and fourth causes of action on the grounds that they do not allege an adverse employment action occurring within 300 days prior to Plaintiff's filing of her EEOC charge. To reach that holding, the Court would necessarily be resolving factual is-

sues and holding Plaintiff to a higher standard than is required on this motion to dismiss. As a result, Defendant's motion to dismiss the first and fourth causes of action is denied.

## IV. *Plaintiff's Unequal Pay Claims*

Plaintiff alleges that "[s]ince about 2006, and continuing to date, Plaintiff was paid less than male employees for equal work on jobs that require equal skill, effort, and responsibility." (Dkt. 1 at ¶ 16). Plaintiff pursues relief for this alleged unequal pay under several different causes of action and theories of liability: (1) in her second cause of action under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"); (2) in her third cause of action under the Lilly Ledbetter Fair Pay Act, 42 U.S.C. § 2000e–5(e) ("FPA"); and (3) in her seventh cause of action under the HRL.

■ As an initial matter, the FPA does not provide a separate statutory cause of action. Rather, it "provides that the statute of limitations on Title VII discrimination claims based on unequal compensation begins to run anew following each receipt of unequal pay. . . ." *Boyar v. City of New York*, No. 10 CV 65(HB), 2010 WL 4345737, at *14 (S.D.N.Y. Oct. 28, 2010). Therefore, Plaintiff's third cause of action is construed as alleging a discrimination claim of unequal pay in violation of Title VII.

■ The EPA prohibits employers from discriminating among employees on the basis of gender by paying unequal wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . ." 29 U.S.C. § 206(d)(1). To state a claim for discrimination under the EPA, a plaintiff must allege the following: "(1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility, and (3) the jobs are performed under similar working conditions." *Bass v. The World Wrestling Fed'n Entm't*, 129 F.Supp.2d 491, 503 (E.D.N.Y.2001) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

■ A discrimination claim for unequal pay under Title VII or the HRL is generally analyzed under the same standards as the EPA, with the exception that intentional discrimination is required under Title VII and the HRL. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ Here, Plaintiff bases her unequal pay claims on the allegation that "[s]ince 2006, Plaintiff was paid less than similarly-situated males for equal work on jobs that required equal skill, effort, and responsibility." (Dkt. 1 at ¶ 60; *see also id.* at ¶¶ 57, 103). Plaintiff does not identify the alleged "similarly-situated males" by position or name, nor does she offer any supporting facts for the allegation that she was paid less than her male counterparts. Rather, Plaintiff takes the position that simply alleging that she was paid less than similarly-situated males for equal work is sufficient to withstand a motion to dismiss.

In support of her position, Plaintiff relies upon *Leibowitz v. Cornell Univ.*, 445 F.3d 586 (2d Cir.2006), where the Second Circuit Court of Appeals reversed the dismissal of the plaintiff's EPA claim that was based on the "'bald assertion' that male employees were paid more than [plaintiff] . . . for similar work. . . ." *Id.* at 593. The Second Circuit reasoned that "[a] court may not dismiss an action 'unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 590 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

However, the *Leibowitz* decision was issued prior to the Supreme Court's decisions in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As a result, the motion to dismiss standard discussed in *Leibowitz* is no longer applicable. *Wexelberg v. Project Brokers LLC,* No. 13 Civ. 7904(LAK)(MHD), 2014 WL 2624761, at *5 (S.D.N.Y. Apr. 28, 2014). Now, a complaint is subject to dismissal unless the factual allegations make a claim facially plausible, and a plaintiff must do more than simply assert a "formulaic recitation" of the elements of a cause of action. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Although the factual allegations in a complaint must be accepted as true on a motion to dismiss, no credit need be given "'to legal conclusions couched as factual allegations.'" *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007)).

▮▮▮ Therefore, when evaluating a discrimination claim for unequal pay, "[b]ald allegations that male employees were paid more than female employees ... will not survive a motion to dismiss...." *Suzuki v. State Univ. of New York Coll. at Old Westbury,* No. 08–CV–4569 TCP, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013). In addition, to withstand a motion to dismiss, the plaintiff must allege how her position and the comparison positions were substantially similar. *Id.* District courts have not hesitated to dismiss equal pay discrimination claims where the plaintiff simply alleges, in a conclusory manner

with no supporting factual basis, that she was paid less than her male co-workers for the same or similar work. *See, e.g., Lehman v. Bergmann Assoc., Inc.,* No. 13–CV–482S, 11 F.Supp.3d 408, 420, 2014 WL 1315385, at *8 (W.D.N.Y. Mar. 31, 2014) (dismissing EPA claims where plaintiff alleged no facts "relative to the conclusion that men were paid more than women"); *Suzuki,* 2013 WL 2898135, at *4 (dismissing EPA claims where plaintiff simply alleged that she was paid less than male employees "although she performed equal, or superior, work and had equal or better qualifications and experience"); *Adams v. Northstar Location Servs., LLC,* No. 09–CV–1063–JTC, 2010 WL 3911415, *6 (W.D.N.Y. Oct. 5, 2010) (dismissing EPA claims where plaintiff sufficiently alleged that male co-worker made $8,000 more in annual pay and was eligible for bonuses, but failed to allege that the two employees "performed equal work on jobs requiring equal skill, effort, and responsibility" and that both jobs were "performed under similar working conditions").

Here, Plaintiff provides no factual support for her unequal pay claims. She simply bases the claims on a formulaic recitation of the elements of an unequal pay claim, but those allegations amount to nothing more than legal conclusions. The allegations are insufficient to survive a motion to dismiss, and therefore, Plaintiff's discrimination claims based upon unequal pay asserted in the second, third and seventh causes of action are dismissed.

## V. *Plaintiff's Racially Hostile Work Environment Claim*

Plaintiff attempts to assert claims based upon a racially hostile work environment under both Title VII (fifth cause of action) and the HRL (eighth cause of action). These claims are "governed by the same standard." *Summa v. Hofstra Univ.,* 708

F.3d 115, 123–24 (2d Cir.2013). As a result, the fifth and seventh causes of action will be analyzed together.

A hostile work environment that is actionable denotes a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment....'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted). A plaintiff pursuing a hostile work environment claim must "plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race]....'" *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007) (per curiam). Whether an environment is "abusive" or "hostile" is evaluated based upon all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the conduct is physically threatening or humiliating, or "a mere offensive utterance"; and (4) whether it "unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. To withstand a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,'...." *Patane,* 508 F.3d at 113 (quoting *Terry,* 336 F.3d at 148).

Plaintiff's hostile work environment claim is based on only one incident that was racially offensive on its face. Specifically, Plaintiff alleges that her co-employees made racist comments on a "sympathy" card posted in an employee kitchen area regarding an article about the loss of incentive pay for Xerox CEO Ursula Burns, who is African American. (Dkt. 1 at ¶¶ 44, 80). Standing alone, this incident does not rise to the level of stating a hostile work environment claim. *See Redd v. New York State Div. of Parole,* 678 F.3d 166, 175–76 (2d Cir.2012) ("Isolated incidents usually will not suffice to establish a hostile work environment [unless] ... the incident is sufficiently 'severe.'"); *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 151 (2d Cir.2011) (occasional and isolated events do not rise to the level of hostile work environment); *Schwapp. v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity'...."); *Snell v. Suffolk Co.,* 782 F.2d 1094, 1103 (2d Cir.1986) (plaintiff must prove "more than a few isolated incidents of racial enmity").

Faced with only one race-based incident, Plaintiff attempts to buttress her hostile work environment claims by relying upon various incidents that Plaintiff contends were directed at her because of her race, but which on their face are racially neutral. Specifically, Plaintiff alleges that her supervisor, Ms. Karpen, a white female, undermined Plaintiff in front of Plaintiff's direct reports, excluded Plaintiff from meetings, took away Plaintiff's work duties, and made negative comments about Plaintiff's career advancement, such as "'it doesn't take two of us to do this job.'" (Dkt. 1 at ¶¶ 18, 20, 74, 78). Plaintiff further alleges that she was targeted by Defendant by having employees complain about her being "intimidating" so that "Plaintiff would be sent to Human Re-

sources and her record tarnished." (*Id.* at ¶¶ 30, 38–40, 111). Plaintiff also alleges that she was assigned to positions with low visibility that were not supported by management (*id.* at ¶¶ 20, 29, 79), and that she was denied promotional opportunities (*id.* at ¶¶ 105–106). This conduct allegedly occurred over the course of more than three years, from 2008 to at least 2011. (*Id.* at ¶¶ 18–41).

■ Plaintiff's allegations cannot support a hostile work environment claim. While actions that are racially neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be " 'some circumstantial or other basis for inferring that [such] incidents … were in fact discriminatory.' " *Lioi v. New York City Dept. of Health and Mental Hygiene*, 914 F.Supp.2d 567, 591 (S.D.N.Y.2012) (quoting *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir.2002)). *Cf. Moll v. Telesector Res. Grp., Inc.*, Nos. 12–4688, 13–0918–cv, 760 F.3d 198, 203, 2014 WL 3673357, at *4 (2d Cir. July 24, 2014) ("The district court should have considered all incidents in their totality—including sex-neutral incidents—before it dismissed [plaintiff's] hostile work environment claims for failure to allege an actionable incident within the applicable statute of limitations."). Plaintiff does not allege "any fact to connect [the race-based incident involving the sympathy card] … to her other allegations of unfair treatment, which are not facially related to her race." *Fleming v. Max-Mara U.S.A., Inc.*, 371 Fed.Appx. 115, 119 (2d Cir.2010) (dismissing hostile work environment claim where there was only one racially harassing comment unconnected to numerous incidents of alleged unfair treatment that were relatively minor in nature, ranging from exclusion from meetings to excessive criticism of work). *See Raum v. Laidlaw Ltd.*, 173 F.3d 845, 1999 WL 248157, at *2 (2d Cir. Apr. 23, 1999) (while remarks may have been "crass and offensive," they were not predicated on plaintiff's protected classification and therefore were not actionable); *Parekh v. Swissport Cargo Serv., Inc.*, No. CV–0801994 (CPS), 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) (complaints concerning unfair disciplinary actions and workplace assignments did not contain suggestion of hostility or offensiveness, nor that they were engaged in because of plaintiff's race).

Here, the only other incident that involved a hostile or offensive utterance that Plaintiff relies upon to support her hostile work environment claim involved Ms. Karpen purportedly telling Plaintiff: "it doesn't take two of us to do this job." (Dkt. 1 at ¶ 20). This comment, even if combined with the sympathy card, does not rise to the level of severe or pervasive conduct sufficient to establish a hostile work environment. Moreover, even if Plaintiff's other allegations of unfair treatment are considered for purposes of evaluating the hostile work environment claims, "[n]one of these alleged acts rise objectively to the level of racial hostility." *Murray–Dahnir v. Loews Corp.*, No. 99 CIV, 9057 LMM, 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999) (claims that plaintiff was compelled to work longer hours, that his performance was criticized, and that his supervisor ceased communicating with him and publicly admonished him, may support a disparate treatment claim, but not a hostile work environment claim). Put simply, Plaintiff's allegations do not, as a matter of law, depict a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment…." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citations and quotations omitted).

**648**

In reality, the bulk of Plaintiff's hostile work environment allegations involve conduct related to Plaintiff's claims of disparate treatment claim, some of which is time-barred as discussed in Part III of this Decision and Order. A hostile work environment claim " 'is a wholly separate cause of action designed to address other types *of work place* behavior, like constant jokes and ridicule or physical intimidation.' " *Ben–Levy v. Bloomberg, L.P.*, No. 11 Civ. 1554(KBF), 2012 WL 2477685, at *12 (S.D.N.Y. June 26, 2012) (quoting *Magadia v. Napolitano*, No. 06 Civ. 14386(CM), 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009), *aff'd*, 518 Fed. Appx. 17 (2d Cir.2013) (plaintiff failed to demonstrate hostile work environment where he admitted that he was not subjected to any comments, jokes, or insults about his protective classification)). "Hostile work environment is not a vehicle for resurrecting time-barred claims of discrimination and retaliation.... The plaintiff cannot piggyback the discrete adverse acts about which he complains onto hostile work environment in order to make them actionable." *Magadia*, 2009 WL 510739, at *17. *See also Joiner v. Am. Red Cross*, No. 02–CV–6286 CJS, 2003 WL 360119, at *4–5 (W.D.N.Y. Feb. 11, 2003) (dismissing plaintiff's hostile work environment claim based upon time-barred sexually hostile incident and other incident that, while not time-barred, concerned disparate treatment as opposed to a hostile work environment).

As a result, Defendant's motion is granted with respect to Plaintiff's claims of a racially hostile work environment alleged in the fifth and eighth causes of action.

## VI. *42 U.S.C. § 1981 Claim*

Plaintiff's sixth cause of action alleges violations of 42 U.S.C. § 1981. To allege a cause of action under § 1981, a plaintiff must allege that she is (1) a member of a racial minority, (2) the defendant intended to discriminate based on the plaintiff's race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Burgin v. Toys–R–Us–Nytex, Inc.*, No. 97–CV–0998E(H), 1999 WL 454302, at *2 (W.D.N.Y. June 30, 1999). "[A] proper pleading under section 1981 must set out facts that demonstrate that the plaintiffs' race was the reason for defendants' conduct." *Id.* The statute of limitations applicable to § 1981 claims is three years. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir.2004).

In support of her § 1981 claims, Plaintiff alleges that she "sought out multiple informational interviews and formal interviews with Defendant, in addition to applying for multiple positions she was qualified for." (Dkt. 1 at ¶ 84). Plaintiff alleges that she applied for multiple positions in 2008 and 2009, but that these positions were given to white individuals. (*Id.* at ¶¶ 84–86). Specifically, Plaintiff alleges that "[s]ince mid–2008 and through late–2009, Plaintiff met with various levels of her management team and expressed interest in leadership roles inside the supply chain." (*Id.* at ¶ 23). Plaintiff references four particular jobs—the iGen Plant Manager, the iGen Materials Manager, the Warehouse Logistical Operations Manager, and the Mono Fab Plant Operations Manager. (*Id.*). Plaintiff further alleges that she "received no support from her immediate supervisors ... in locating a suitable, new position," was "removed from a people-management position and given a non-people management position and replaced with a white female," and received low-visibility assignments. (*Id.* at ¶¶ 87–89). Finally, Plaintiff alleges that her co-employees made racist comments on the

previously-referenced "sympathy" card. (*Id.* at ¶ 92).

Plaintiff filed the instant action on August 1, 2012. To the extent Plaintiff was denied promotions or was otherwise allegedly discriminated against before August 1, 2009, her claims pursuant to § 1981 are time-barred. However, even Defendant concedes that a portion of Plaintiff's claims under § 1981 are not time-barred. (Dkt. 5 at 2). Accordingly, Defendant's motion to dismiss the sixth cause of action is denied.

## VII. *Plaintiff's Gender Discrimination Claims Under the HRL*

Plaintiff's seventh cause of action asserts a gender discrimination claim under the HRL based upon the failure to promote Plaintiff to various positions, the assignment of Plaintiff to low visibility projects, the moving of Plaintiff's office, and being told to "walk the process" on an IPO assignment. (Dkt. 1 at ¶¶ 97–102). Defendant contends that a portion of these claims are time-barred, and to the extent any of the allegations occurred within the statute of limitations period, they fail to state a plausible claim. (Dkt. 5–3 at 33–34).

As discussed above at Part III of this Decision and Order, the Court cannot determine as a matter of law at this stage of the proceedings that the allegations serving as the basis for Plaintiff's claimed adverse employment actions do not, in fact, allege a material change in the terms and conditions of Plaintiff's employment. Moreover, the statute of limitations applicable to a HRL claim is even longer than the time period under Title VII, as any claims under the HRL are subject to a three-year statute of limitations. N.Y. C.P.L.R. 214(2). Accordingly, Defendant's motion to dismiss the seventh cause of action is denied (other than, as discussed

in Part IV of this Decision and Order, to the extent it alleges unequal pay claims).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. Plaintiff's unequal pay claims alleged in the second, third and seventh causes of action are dismissed, as are Plaintiff's claims of a racially hostile work environment alleged in the fifth and eighth causes of action. However, Plaintiff has plausibly alleged gender discrimination claims in violation of Title VII in the first cause of action, based upon alleged adverse employment actions occurring 300 days prior to commencement of this lawsuit, and Plaintiff has similarly plausibly alleged gender discrimination claims in violation of the HRL in the seventh cause of action based upon alleged adverse employment actions (other than any unequal pay claims) occurring three years prior to commencement of this lawsuit. Furthermore, Plaintiff has plausibly alleged race discrimination claims in violation of Title VII in the fourth cause of action based upon alleged adverse employment actions occurring 300 days prior to commencement of this lawsuit, and Plaintiff has plausibly alleged claims pursuant to 42 U.S.C. § 1981 in the sixth cause of action based upon conduct within three years of Plaintiff's commencement of this lawsuit.

SO ORDERED.